# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**JOSEPH FRIEND,**

    Plaintiff,

v.                                                   **CIVIL ACTION NO. 3:12-CV-17**
                                                              **(JUDGE GROH)**

**REMAC AMERICA, INC.,**

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO AMEND

### I. Introduction

This matter is currently before the court on Plaintiff's Motion to Amend his Complaint [Doc. 42], filed on November 15, 2012. On November 21, 2012, the parties filed a Stipulation and Agreed Order [Doc. 45] extending Defendant's deadline to respond to Plaintiff's motion. On November 26, 2012, the Court granted the parties' stipulation permitting Defendant to have a twenty-one day extension to respond to Plaintiff's motion [Doc. 46]. Defendant filed its Response [Doc. 48] on December 20, 2012. Plaintiff did not file a reply, and the deadline for filing a reply has passed. Thus, these motions are ripe for the Court's review. For the following reasons, the Court **DENIES** Plaintiff's Motion to Amend his Complaint [Doc. 42].

### II. Factual Background

In August 2009, Maryland corporation Defendant Remac America, Inc. ("Remac") hired Mineral County, West Virginia, resident Plaintiff Joseph Friend ("Friend") to work

1

at its scrap tire facility in Brandywine, Maryland. On January 29, 2010, Plaintiff moved to Defendant's facilities in West Virginia. On March 26, 2010, Plaintiff suffered a head injury when the chain hook attached between two bull dozers broke, causing the end of the chain to fly back and strike him in the head. At the time of his injuries, Plaintiff was working at a site near Martinsburg, Berkeley County, West Virginia for Defendant Remac.

Plaintiff concurrently filed claims for workers' compensation benefits in West Virginia and Maryland, though Defendant only had workers' compensation insurance coverage in Maryland. The West Virginia Workers' Compensation Uninsured Employers' Fund accepted Plaintiff's claim for payment on May 11, 2010. The Maryland Injured Workers' Insurance Fund ("IWIF") accepted Plaintiff's claim for payment by letter dated December 8, 2010.

Meanwhile, the West Virginia Offices of the Insurance Commissioner ("OIC") filed state actions in West Virginia and Maryland against Defendant to recover more than $24,000 of medical benefits it paid to Plaintiff since May 2010. In October 2010, these lawsuits were resolved pursuant to a Global Agreement and Settlement with Release entered into among Defendant, Plaintiff, the Maryland IWIF, and the West Virginia OIC. The Maryland IWIF agreed to reimburse the West Virginia Fund for the paid medical benefits. Defendant agreed to pay the West Virginia OIC a fine of $10,000 and the costs of litigation. Plaintiff agreed to "withdraw, as though it were never filed, his West Virginia workers' compensation claim . . . and to waive his right to receive any additional West Virginia workers' compensation benefits from the [West Virginia] Fund as of October 1, 2011." [Doc. 5-32 at 7]. However, Plaintiff "specifically preserve[d] his right

2

to bring a civil action under W. Va. Code § 23-4-2(d)(2)(ii)," which is a deliberate intent action. *Id.*

### III. Procedural Background

Plaintiff filed his Complaint in the Circuit Court of Berkeley County, West Virginia on January 24, 2012. Defendant filed a Notice of Removal within thirty days after it was served with the Complaint [Doc. 1]. Plaintiff is a citizen of West Virginia, and Defendant is a Maryland corporation with its principal place of business in Maryland. Defendant asserts that the matter in controversy exceeds $75,000. Thus, this case was removed pursuant to diversity jurisdiction.

On March 6, 2012, Defendant filed a Motion to Dismiss or in the alternative, Motion for Summary Judgment [Doc. 4]. Plaintiff responded on March 20, 2012 [Doc. 7]. On April 3, 2012, Defendant filed its reply [Doc. 10]. On May 7, 2012, this Court entered its Order denying Defendant's Motion to Dismiss as Converted to a Motion for Summary Judgment [Doc. 16]. The Court held that the language of West Virginia Code § 23-2-1c(c) did not preclude Plaintiff's civil action because the statutory language applies only when "the employee is a resident of a state *other than this State* . . . ." [Doc. 16, at 7]. The Court held that Plaintiff is a West Virginia resident; thus, Defendant's reliance on West Virginia Code § 23-2-1c(c) was misplaced as it applies only when a non-resident employee is involved.

On October 9, 2012, Plaintiff filed a Motion for Partial Summary Judgment on the Issue of Plaintiff's Burden of Proof [Doc. 35]. On October 23, 2012, Defendant filed a Response/Cross Motion for Partial Summary Judgment on the Issue of the Cause Which Plaintiff is Allowed to Bring [Doc. 38]. On November 5, 2012, Plaintiff filed his response in opposition to Defendant's cross motion [Doc. 40]. On November 13, 2012, Defendant filed

its reply [Doc. 41].  The Court's Order granted Defendant's Cross Motion for Partial Summary Judgment on the Issue of the Cause Which Plaintiff is Allowed to Bring [Doc. 38] and denied Plaintiff's Motion for Partial Summary Judgment on the Issue of Plaintiff's Burden of Proof [Doc. 35].  Thus, Plaintiff is prohibited from filing a negligence action as it is barred by the Global Settlement Agreement.

## IV. Legal Standard

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required, [within] 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." **FED. R. CIV. P. 15(a)(1)(B)**.  However, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." **FED. R. CIV. P. 15(a)(2)**.

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." **FED. R. CIV. P. 15(a)(2)**; *see also **Foman v. Davis***, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962) (Supreme Court declaring that "this mandate is to be heeded").  However, a district court has discretion to deny a motion to amend a complaint so long as it does not outright refuse "to grant the leave without any justifying reason." ***Foman,*** 371 U.S. at 182, 83 S. Ct.227.  A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.  *See **Laber v. Harvey***, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).  The law is well settled "that leave to amend a pleading should be denied

4

only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." ***Johnson v. Oroweat Foods Co.***, 785 F.2d 503, 509 (4th Cir.1986). Delay alone is an insufficient reason to deny leave to amend. *See **id.*** Rather, the delay must be accompanied by prejudice, bad faith, or futility. See ***Edwards v. City of Goldsboro***, 178 F.3d 231, 242 (4th Cir. 1999). The Fourth Circuit has stated that

> [w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (internal citations omitted). An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.

***Davis v. Piper Aircraft Corp.***, 615 F.2d 606, 613 (4th Cir. 1980).

Leave to amend should be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face. See ***Johnson v. Oroweat Foods Co.***, 785 F.2d 503, 510 (4th Cir. 1986); ***Davis v. Piper Aircraft Corp.***, 615 F.2d 606, 613 (4th Cir. 1980), *cert. dismissed*, 448 U.S. 911, 101 S. Ct. 25 (1980). A proposed amendment is futile "if . . . [it] fails to satisfy the requirements of the federal rules," such as Rule 12(b)(6). ***United States ex rel. Wilson v. Kellogg Brown & Root, Inc.***, 525 F.3d 370, 376 (4th Cir. 2008) (quoting ***United States ex rel. Fowler v. Caremark RX, LLC,*** 496 F.3d 730, 740 (7th Cir. 2007)); *see also* ***United States v. Pittman***, 209 F.3d 314, 318 (4th Cir. 2000) (affirming district court's holding that plaintiff's amendment was futile as it was barred by the statute of limitations and did not relate back).

5

To survive dismissal for failure to state a claim, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Ashcroft v. Iqbal***, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A reviewing court must "'take the facts in the light most favorable to the plaintiff,' but it need not accept legal conclusions drawn from those facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" ***Giarratano v. Johnson***, 521 F.3d 298. 302 (4th Cir. 2008) (quoting ***E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,*** 213 F.3d 175, 180 (4th Cir. 2000)). A plaintiff must do more than provide labels and conclusions–"a formulaic recitation of the elements of a cause of action will not do." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).

The Fourth Circuit Court of Appeals stated that "[a] plaintiff will not successfully resist dismissal if he provides mere 'naked assertions devoid of further factual enhancement' or his allegations establish only 'a sheer possibility that a defendant has acted unlawfully.'" ***Van Leer v. Deutsche Bank Securities, Inc.***, 479 Fed. Appx. 475, 479 (quoting ***Iqbal***, 556 U.S. 662, 129 S. Ct. At 1949 (internal quotations and alteration omitted)). Additionally, the plaintiff's claims must cross "the line from conceivable to plausible." ***Twombly***, 550 U.S. at 570, 127 S. Ct. 1955.

## V. Discussion

Here, Plaintiff did not amend his Complaint within 21 days after service of Defendant's Motion to Dismiss [Doc. 4], filed on March 6, 2012. Thus, Plaintiff must have leave of court to amend his Complaint. Plaintiff seeks to amend his Complaint to pierce the corporate veil and bring suit against Mark Soresi personally, the sole

6

shareholder, owner, and operator of Defendant Remac. First, Plaintiff argues that it meets West Virginia's two-prong test for piercing the corporate veil, and thus, amending the complaint is not futile. Second, Plaintiff contends that leave should be granted when justice so requires and that Plaintiff did not discover Defendant was undercapitalized "until such time as Plaintiff received insurance policies from the corporation through written discovery." [Doc. 43].

Plaintiff seeks to amend his Complaint to add four new allegations:

3. Upon current information and belief, Mark Soresi ("Soresi") is a resident of the State of Maryland, is the owner, operator, and sole shareholder of Defendant Remac, failed to follow corporate formalities, and made business decisions for Remac, including decisions regarding the purchase of insurance to protect workers who may be injured on the job while working in West Virginia, prior to and on March 26, 2010.

4. Since the filing of the original complaint, Plaintiff has learned Defendant Remac may not have carried proper insurance coverage to protect employees injured on the job in West Virginia. Specifically, Remac may not have any insurance policies in place which cover deliberate intent causes of action, or negligence causes of action, filed by employees who were injured on the job in the State of West Virginia on or before March 26, 2010.

5. Due to the possible lack of insurance coverage, Defendant Remac is underfunded and may not be financially able to cover any judgment which may be awarded against it by a jury in West Virginia for a deliberate intent cause of action, or a negligence cause of action, filed by an employee who was severely injured on the job on or before March 26, 2010 while working in the State of West Virginia.

6. As the sole shareholder and owner and operator of Defendant Remac, Defendant Mark Soresi made a conscious decision to not purchase various insurance coverage for Defendant Remac, thus undercapitalizing the corporation, and is personally liable to Plaintiff for his injuries and damages.

Defendant objects to Plaintiff's Motion to Amend for three reasons. First, Defendant argues that the amendment is futile because it would not survive a motion to

dismiss. Defendant contends that Plaintiff uses the incorrect test for piercing the corporate veil, that Defendant is not undercapitalized to justify piercing the corporate veil, and that the mere existence of Defendant as a close corporation does not qualify as a lack of corporate formalities. Second, Defendant argues that Plaintiff's amendment is brought in bad faith to circumvent a previous discovery ruling by Magistrate Judge Seibert, and Plaintiff "mislead the Court . . . to believe that REMAC's lack of West Virginia workers' compensation insurance at the time of the subject accident equates to REMAC having no insurance available to Plaintiff for his injuries . . . ." Def.'s Resp., p. 22. Last, Defendant argues that if Plaintiff's Motion to Amend is granted it would result in undue prejudice to Defendant and Mr. Soresi because Plaintiff is introducing a new legal theory and would bring in a new defendant. *Id.* at 23.

**A. Futility of Amendment**

The Court must first determine whether leave to amend should be denied on the ground of futility; thus, the Court analyzes the proposed amendment to determine whether it would survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff argues that he has alleged sufficient facts to permit him to pierce the corporate veil. However, Plaintiff provided the Court with a two-prong test used by the Supreme Court of Appeals of West Virginia in a *contract case*. This matter is a tort case. The standard for piercing the corporate veil for a tort case is different than the standard for a contract case.

West Virginia law "presumes . . . that corporations are separate from their shareholders." Syl. Pt. 1, **Laya v. Erin Homes, Inc.**, 352 S.E.2d 93 (W. Va. 1986)

(quoting Syl. Pt. 3 (in part), **S. Elec. Supply Co. v. Raleigh Cnty. Nat'l Bank,** 320 S.E.2d 515 (W. Va. 1984)). The party soliciting a court to disregard a corporate structure has the burden of proof. **Id.** The Supreme Court of Appeals of West Virginia elaborated on piercing the corporate veil, stating:

> [w]hile, legally speaking, a corporation constitutes an entity separate and apart from the persons who own it, such is a fiction of the law introduced for purpose of convenience and to subserve the ends of justice; and it is now well settled, as a general principle, that the fiction should be disregarded when it is urged with an intent not within its reason and purpose, and in such a way that its retention would produce injustices or inequitable consequences."

Syl. Pt. 2, **Laya**, 352 S.E.2d 93 (quoting Syl. Pt. 10, **Sanders v. Roselawn Mem. Gardens**, 159 S.E.2d 784 (W. Va. 1968)).

In West Virginia's leading case on piercing the corporate veil, the Supreme Court of Appeals of West Virginia listed nineteen factors to be considered in deciding whether to pierce the corporate veil, and the Court noted that the list was not complete. *See* **Laya**, 352 S.E.2d at 98-99. In **Southern Electrical Supply Co.**, a tort case, the Supreme Court of Appeals of West Virginia stated:

> [D]ecisions to look beyond, inside and through corporate facades must be made case-by-case, with particular attention to factual details.
>
> Decisions to "pierce" involve multifarious considerations, including inadequacy of capital structures, whether personal and corporate funds have been commingled without regard to corporate form by a sole shareholder, whether two corporations have commingled their funds so that their accounts are interchangeable; whether they have failed to follow corporate formalities, siphoning funds from one corporation to another without regard to harm caused either entity, or failed to keep separate records. Other reasons to disregard the structure are, *total* control and dominance of one corporation by another or a shareholder; existence of a dummy corporation with no business activity or purpose; violation of law or public policy; a unity of interest and ownership that causes one party or

9

>entity to be indistinguishable from another; common shareholders, common officers and employees, and common facilities.

320 S.E.2d at 523. The Supreme Court of Appeals of West Virginia disregards the corporate entity in situations "where the corporate form is being used to perpetrate injustice, defeat public convenience, or justify wrongful or inequitable conduct." **Mills v. USA Mobile Commc'ns, Inc.**, 438 S.E.2d 1, 4 (W. Va. 1993).

Defendant argues that the corporate veil cannot be pierced unless Plaintiff demonstrates that Soresi participated in the wrongful act that makes Soresi personally liable for Plaintiff's injuries. The Supreme Court of Appeals of West Virginia recognized that "an officer of a corporation is not personally liable for the corporation's torts unless he directed, sanctioned, or participated in the wrongful acts, including fraud: 'A director or an officer of a corporation does not incur personal liability for its torts merely by reason of his official character unless he has participated in or sanctioned the tortious acts [.]'" **Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc.**, 425 S.E.2d 144, 148 (W. Va. 1992) (internal citation omitted). However, a footnote in **Bowling** made clear that the participation rule "does not depend on the same grounds as 'piercing the corporate veil,' that is, inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporation organization." *Id.* Because participation liability is distinct from piercing the corporate veil and Plaintiff has not raised participation liability, the Court will address Plaintiff's allegation that Soresi pierced the corporate veil.

Plaintiff contends that **Laya**'s two-prong test for piercing the corporate veil should control. The two-prong test has (1) a disregard of formalities requirement and (2) a

fairness requirement. *Laya*, 352 S.E.2d at 99. However, the Supreme Court of Appeals of West Virginia clearly stated that the two-prong test applies to "a case involving an alleged breach of contract." *Id.* Because this is a torts case, the two-prong test does not apply; however, the Court will apply *Laya*'s multi-factor, totality of the circumstances test which also applies to tort cases.

Plaintiff's proposed Amended Complaint states the following to attempt to allege a claim for piercing the corporate veil: (1) Soresi did not observe corporate formalities and (2) Defendant was undercapitalized. First, Plaintiff states that Soresi did not observe corporate formalities because he is the sole owner, officer, and shareholder of Defendant Remac and Remac does not have a board of directors or board of directors or shareholder meetings. Pl.'s Mem. of Law, p. 23, ¶ 3. Defendant is a close corporation, incorporated under Maryland laws, and it properly elected not to have a board of directors in its Articles of Incorporation. *See* **MD. CODE §4-101**, *et seq.* (permitting close corporation to elect to have no board of directors)*;* Def.'s Ex. I, Articles of Incorporation, p. 3. Also, pursuant to Maryland law, an individual may hold more than one office in a close corporation. *See* **MD. CODE § 4-102**. Although Defendant was incorporated under Maryland law, West Virginia law recognizes close corporations and has stated that "[t]he concept of limited shareholder liability applies generally to a close corporation, as well as to a corporation whose shares are publicly traded." *Laya*, 352 S.E.2d at 97. Additionally, West Virginia law "permits close corporations, with one shareholder, so [the Court] cannot [properly] disregard a corporation solely because it has one . . . shareholder [ ]." *Id.* (quoting *S. Elec. Supply Co.*, 320 S.E.2d at 515).

11

Thus, although Soresi is the sole shareholder and director and fails to have a board of directors and board of directors or shareholder meetings, it does not display a lack of corporate formalities to justify piercing the corporate veil as these practices and decisions are legally permitted under a close corporation. The only other statement in Plaintiff's proposed Amended Complaint states that Defendant "failed to follow corporate formalities." This is a legal conclusion and is not accepted as true. Therefore, taking Plaintiff's factual allegations as true, the Plaintiff has failed to sufficiently allege a lack of corporate formalities that justify piercing the corporate veil.

Second, Plaintiff alleges that Defendant was undercapitalized because it "*may not* have carried proper insurance coverage to protect employees injured on the job in West Virginia" and "*may not* have any insurance policies in place which cover deliberate intent causes of action, or negligence causes of action, filed by employees who were injured on the job in the State of West Virginia on or before March 26, 2010." Pl.'s Mem. of Law, p. 23, ¶ 4. Plaintiff summarizes that Defendant may be undercapitalized "[d]ue to the *possible* lack of insurance coverage." Pl.'s Mem. of Law, p. 23, ¶ 6.

In considering whether a corporation is undercapitalized, a court will consider whether the corporation failed to adequately capitalize itself for the reasonable risks of the corporate undertaking. ***Laya***, 352 S.E.2d at 98. When analyzing Plaintiff's allegations that Defendant was undercapitalized, the Court must determine that Plaintiff has nudged his claim across "the line from conceivable to plausible." ***Twombly***, 550 U.S. at 570, 127 S. Ct. 1955. A complaint does not suffice if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" ***Iqbal***, 556 U.S. at 677, 129 S. Ct.

1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955).

Plaintiff's allegations regarding Defendant's undercapitalization are all qualified by *may* and *possible*. Plaintiff makes no allegation establishing that it is *plausible* that Defendant was undercapitalized. In analyzing Plaintiff's allegations, Defendant is not undercapitalized to justify piercing the corporate veil because Plaintiff fails to allege that Defendant was inadequately capitalized for the reasonable risks of its corporate undertaking. At the time of Plaintiff's injury, although Defendant was not subscribed to West Virginia Worker's Compensation Fund, it was subscribed to the Maryland Injured Workers' Insurance Fund ("IWIF") to cover injured employees. Through Defendant's subscription to IWIF and pursuant to the Global Settlement Agreement, IWIF has paid Plaintiff's medical expenses and lost wages. Def.'s Resp., p. 5. Plaintiff also admitted that IWIF continues to pay all his medical expenses and lost wages. *Id.* Therefore, although Defendant was not subscribed to the West Virginia Worker's Compensation Fund, Defendant was insured under Maryland's equivalent to worker's compensation, IWIF.

Next, Plaintiff argues that Defendant *may* not have proper insurance coverage to protect employees injured on the job in West Virginia. The Plaintiff does not allege facts indicating that it is plausible that Defendant is undercapitalized. Instead, in the proposed Amended Complaint, Plaintiff simply asserts that Defendant is undercapitalized because it did not purchase "various insurance coverages for Defendant Remac." Pl.'s. Mem., p. 23. However, Defendant argues that it has two insurance coverage policies, both with limits of $1,000,000. Def.'s Resp., p. 6. Plaintiff fails to indicate what other "various insurance coverages" Defendant failed to purchase

13

that has now resulted in the corporation being undercapitalized.  Plaintiff also fails to allege how Defendant's IWIF coverage as well as its other insurance coverage is inadequate.  Therefore, Plaintiff has failed to allege sufficient facts to state a claim for piercing the corporate veil to "disregard [the defendants'] separate corporate structure" and hold Soresi personally liable. **S. Elec. Supply Co.**, 320 S.2d at 522 (citation omitted).

In addition to Plaintiff's failure to properly allege a lack of corporate formalities and undercapitalization, Plaintiff has not made any allegation that Soresi commingled his personal funds or assets with Defendant's funds, that there was a diversion of Defendant's funds or assets to noncorporate uses, or that Soresi represented to persons outside the corporation that he is personally liable for the debts or other obligations of the corporation.  See **Laya**, 352 S.E.2d at 98-99 (listing other factors for Court to consider in piercing the veil analysis).  Plaintiff has attempted to allege only two factors to justify piercing the corporate veil, but Plaintiff's allegations are either legal conclusions or are merely possible rather than plausible.  For the above reasons, it is obvious on the face of the proposed amendment that Plaintiff has failed to meet the standard for piercing the corporate veil in a tort case.  Accordingly, the proposed amendment is futile and is hereby **DENIED.**

**B. Prejudice**

Defendant has also asserted that Plaintiff's motion to amend should be denied on the ground that the amendment is prejudicial.

In determining whether an amendment is prejudicial, the court looks to the nature

14

and timing of the amendment. *Davis*, 615 F.2d at 613. An example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Johnson*, 785 F.2d at 509. By contrast, an amendment is not prejudicial if it "merely adds an additional theory of recovery to the facts already pled and is offered before *any* discovery has occurred." *Davis*, 615 F.2d at 613 (emphasis added).

Friend attempts to amend his Complaint well over eight months *after* the matter was removed to this Court. During those months, the parties have engaged in discovery, evidentiary hearings on discovery motions, and filed dispositive motions. Although trial is not until August 2013, a significant amount of discovery has already occurred and some major deadlines have passed. Friend has delayed eight months in filing this amendment. In addition to the eight month delay, Friend's amendment would prejudice the Defendant as it raises an entirely new legal theory that would require the gathering and analysis of facts not already considered by the Defendant, as Friend's amendment focuses on piercing Remac's corporate veil to hold Soresi personally liable for Friend's injuries. See *Small v. Ramsey*, Civil Action No. 1:10-CV-121, 2012 WL 405049, *3 (N.D.W. Va. 2012) (denying leave to amend because trial was only five months away, plaintiff sought to add an entirely new counterclaim and party, and many of the major deadlines had already passed in the case). Therefore, the combination of the Plaintiff's delay in filing the amendment as well as the prejudice the Defendant will suffer by the amendment, the Court **FINDS** the amendment should also be denied because of prejudice the Defendant would suffer as a result.

## VI.  Conclusion

For the foregoing reasons, this Court hereby **DENIES** the Plaintiff's Motion to Amend his Complaint.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: February 14, 2013

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE